UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TASHA HERBERT                                      CIVIL ACTION

VERSUS                                            NUMBER: 16-02870

NEW ORLEANS CITY                                  SECTION: "B"(5)

### ORDER AND REASONS

This is an action brought by Plaintiff, Tasha Herbert ("Herbert"), against the City of New Orleans ("the City"), asserting claims that the City failed to comply with Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*, and the Rehabilitation of 1973, 29 U.S.C. § 794, *et seq.* ("RA"), at its Kenilworth Playground facility.[1]   Herbert's substantive claims for injunctive relief and damages were resolved by the entry of a consent judgment and an addendum thereto.  (Rec. docs. 21, 24).  The issue of recovery of attorneys' fees and costs was reserved and the Court issued a briefing schedule on the matter.  (Rec. doc. 22).

Now before the Court is Herbert's Motion for Attorneys' Fees and Costs.  (Rec. doc. 27).  The City filed an opposition memorandum (rec. doc. 30) and the Plaintiff filed a reply. (Rec. doc. 31).  The Court previously held a lengthy hearing on the motion and took the matter under advisement.  (Rec. docs. 36, 37).

---

[1] This matter is before the Court on the consent of the parties under 28 U.S.C. § 636(c).  (Rec. doc. 19).

## I.    PROCEDURAL BACKGROUND

Herbert moves as the "prevailing party" under the ADA for an award of attorneys' fees totaling $21,420.35[2] and costs of $3,125.59.

In her motion, Herbert argues:  (1) that the ADA and cases interpreting it clearly establish that she is a prevailing party entitled to recover fees and costs; (2) that her counsel's hourly rates are consistent with rates recently awarded by this Court in other cases; and (3) that the attorneys' claimed hours and the costs sought are reasonable and were required because the City was intransigent in refusing to negotiate on the issue of fees and costs.

The City filed a timely opposition memorandum.  It argued first that Herbert is not a "prevailing party" entitled to recover fees and costs.  In support of this argument, the City claims that the consent *judgment* in this case is somehow different than a "court-ordered consent *decree*."  (Rec. doc. 30 at p. 4).  The City also argues that because Herbert is not expressly denominated as a "prevailing party" in the consent judgment, she cannot be considered to be one.

The City goes on to argue that counsel's requested hourly rates are excessive when compared to recent awards in other ADA cases brought in this District by the lawyers in this case *and* to those lawyers' own earlier demands in this very case.  (*Id.* at p. 9).  The City also claims that the number of hours "billed" and the costs sought by Plaintiff are excessive for a variety of reasons, including the vagueness of the supporting documentation and the

---

[2]  There are two billing statements ("invoices") presented by Herbert's counsel, the Bizer & DeReus law firm, one attached to the original motion and another attached to the reply brief.  (Rec. docs. 27-2 and 31-3).  In those briefs, counsel concedes that .10 hours of Bizer's time and .33 hours of attorney Marc Florman's time should be excluded.  (Rec. docs. 31-2 at pp. 6, 32).

presence of a great deal of duplicative work by the three attorneys in the case.  Finally, the City argues that "justice considerations weigh against an attorney's fees award" to Herbert, an argument based in large part on the notion that this case is an example of "vexatious" ADA litigation "designed to harass and intimidate business owners into agreeing to cash settlements," as evidenced in part by Plaintiffs' failure to seek any pre-litigation resolution of her complaints.  (Rec. doc. 30).

Herbert filed a reply brief that essentially restates all of her earlier arguments on "prevailing party" status and the reasonableness of counsel's rates and the amount of time and costs expended.

Herbert's counsel made no real effort in the reply brief to address the City's argument that this litigation and much of its costs could have been avoided had she attempted some sort of pre-litigation resolution, so the Court questioned counsel on this issue at the hearing. The Court expressed concern that, not only did Herbert decline any such attempt in this case, but to the Court's knowledge she had never done so in any of the many cases she has filed here.[3]  The Court asked Herbert's lead counsel, Andrew Bizer ("Bizer"), of the Bizer & DeReus law firm, if he possessed any *evidence* that pre-litigation attempts at resolution had failed in any case he was aware of or had participated in.  He did not.  Rather, counsel argued that "[t]he ADA was passed 26 years ago ... "[t]here's your grace period" and [i]t's our belief that if you just write a letter and complain to your city councilman, nothing is going to get done." (Rec. doc. 37 at pp. 6-7).  As noted, despite the Court's invitation to do so, counsel could offer no evidence in this case or any other to support that "belief."

---

[3]  Herbert has filed 19 ADA lawsuits in this District since the afternoon of October 11, 2011.  That afternoon alone she filed five lawsuits against five separate defendants.

The Court has now carefully considered the papers, the law, and the argument of the parties, and is prepared to rule on the motion, which will be GRANTED IN PART AND DENIED IN PART.

## II.   STANDARD OF REVIEW

The ADA "was enacted to assure no person would be discriminated against on the basis of disability in a number of specified areas." *Brother v. Miami Hotel Inv., Ltd.*, 341 F.Supp.2d 1230, 1233 (S.D. Fla. 2004)(citing 42 U.S.C. § 12181). "In order to assure the availability and willingness of lawyers to take on such matters, 42 U.S.C. § 12205 provides that the court may award the prevailing party a reasonable attorney's fee." *Id.* "The key word here is reasonable[:] . . . [t]he Act was never intended to turn a lofty and salutary mission into a fee-generating mill for some lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case before it is either tried or settled." *Id.*

The "most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983). The product of this calculation is called the "lodestar." *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied sub nom.* 516 U.S. 862, 116 S.Ct. 173 (1995). There is a "strong" presumption that the lodestar calculation produces a reasonable fee. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S.Ct. 1662, 1673 (2010).

The party seeking attorneys' fees bears the burden of establishing the reasonableness of the fees by submitting adequate documentation and time records of the hours reasonably expended and proving the exercise of "billing judgment." *Wegner v. Standard Ins. Co.*, 129 F.3d 814, 822 (5th Cir. 1997). Attorneys are required to make a good-faith effort to "... exclude

from a fee request hours that are excessive, redundant, or otherwise unnecessary. . . ." *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1939-40.  Specifically, the party seeking the award must show all hours actually expended on the case but not included in the fee request.  *Leroy v. City of Houston*, 831 F.2d 576, 585 n. 15 (5th Cir. 1987).  These requirements underlie the core principle that hours that are not properly billed to one's client are likewise not properly billed to one's adversary.  *Hensley*, 461 U.S. at 434, 103 S.Ct. at 1940.

Once the lodestar has been determined, the Court must then consider the applicability and relative weight of the 12 factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974).[4]  While the Court may make upward or downward adjustments to the lodestar figure if the *Johnson* factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases.  *See Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993).

After calculation of the lodestar, the burden shifts to the party opposing the application to contest the reasonableness of the hourly rate requested and/or the reasonableness of the hours expended ". . . by affidavit or brief with sufficient specificity to give [the] fee applicants notice . . ." of those objections.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3rd Cir. 1990).

Under the ADA, an award of attorney's fees to the prevailing party is directed to the court's discretion:  "[i]n any action . . . commenced pursuant to this chapter, the court . . . , in its discretion, may allow the prevailing party, . . . a reasonable attorney's fee, including

---

[4] The twelve *Johnson* factors are:  (1) the time and labor involved; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of counsel; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases.  *See Johnson*, 488 F.2d at 717-719.

litigation expenses, and costs . . . ." 42 U.S.C. § 12205 (emphasis added).  A court's discretion in this regard must be informed and limited by binding precedent.

"To be entitled to an award of attorney's fees, Plaintiffs must either receive an adjudicated judgment on the merits or persuade the defendant to enter into a consent judgment that provides for some sort of fee award."  Pamela S. Karlan, *Disarming the Private Attorney General*, 2003 U. Ill. L. Rev. 183, 207 (2003)(citing *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1841 (2001); *Evans v. Jeff D.*, 475 U.S. 717, 742-43, 106 S.Ct. 1531, 1545 (1986)).  The Fifth Circuit has held that in civil rights cases (including cases brought under the ADA) "'a prevailing Plaintiff . . . is presumptively entitled to reasonable attorney's fees, unless a showing of 'special circumstances' is made that would deem such an award unjust.'"  *Deutsh v. Jesus Becerra, Inc.*, 668 Fed.Appx. 569, 570-71 (5th Cir. 2016)(quoting *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001).

## III.   ANALYSIS

### A.   *"Prevailing Party"*

The City initially argued in its opposition that Herbert is not entitled to recover fees and costs in this action because she is not a "prevailing party" under the ADA.  This argument, based primarily upon the idea that the consent judgment entered in the case does not expressly denominate her as such, was and is misguided and wrong and it was wisely abandoned by the City's counsel at the hearing.   Because the court-approved consent judgment in this case effected a material alteration in the legal relationship between the parties and bears the Court's judicial imprimatur, Herbert is to be considered the prevailing party under well-established binding precedent.  *See, e.g.*, *Buckhannon Bd. & Care Home, Inc.*

*v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S.Ct. 1835, 1840 (2001); *Dearmore v. City of Garland*, 519 F.3d 517, 521 (5th Cir. 2008).

    B.  *Reasonable Hourly Rates*

Plaintiff seeks recovery of fees for time expended by three different attorneys and a paralegal. She requests rates of $325 per hour for the work of Bizer, $225 per hour for the work of attorney Garret DeReus ("DeReus"), $200 per hour for the work of attorney Marc Florman ("Florman"), and $90 per hour for the work of a paralegal James Daniel. These rates are all ostensibly supported by affidavits executed by the three attorneys involved. (Rec. docs. 27-3 through 27-5). Those affidavits are silent, however, as to whether the requested rates are *customarily* billed or requested by any of these lawyers. This is a notable omission, for reasons that will be discussed below.

As the Court noted at the outset of the hearing on Plaintiff's motion, counsel's request for the aforementioned rates seems to ignore the fact that these same lawyers' rates were recently the subject of an Order and Reasons issued by District Judge Jay C. Zainey in a different ADA lawsuit in which Judge Zainey awarded rates substantially lower than those requested in this case. Rather than look to that decision, Plaintiff urges the Court to rely upon an earlier, non-ADA case involving other lawyers from Washington D.C. in setting counsel's rates here

Judge Zainey issued his Order and Reasons in the matter entitled *Mark v. Covington City, et al.*, No. 15-CV-5977 "A"(4) on July 8, 2016. (*See* No. 15-CV-5977, rec. doc. 30). Notably in that case, Bizer had actually *requested* a rate for himself of $275 per hour in a brief filed on June 30, 2016 – while he was actively litigating *this* case. In 35 pages of briefing in this matter, Bizer makes no effort to explain or justify his request for a rate that is $50 per hour

higher than the one he requested in a similar case only seven months earlier.  Owing to this omission, the Court questioned Bizer on the matter at the beginning of the hearing:

> THE COURT: . . . How do you justify that increase over that period of time when this case actually began, I believe, before you filed the fee petition in Ms. Mark's case?
>
> MR. BIZER:  Sure, Your Honor. When we do our research as to what judge we're in front of, we look and see what fees that they award, what the range is, and we ask for the high end of whatever range is acceptable to that specific judge.

(Rec. doc. 37 at p. 4).

While the Court appreciates counsel's candor as to his strategy, the undersigned believes this approach is unsound and that it fails to justify departure from the reasoning or result in the *Mark* case cited above.  The outcome of a motion for attorneys' fees should not depend upon which judge was randomly allotted the case in which the motion is made and the calculation of a reasonable hourly rate should not depend on such arguably subjective criteria.  Rather, it should be based upon prevailing rates in this legal community and the reasonable rates awarded by the judges in this District for lawyers of similar skill and experience.  Here, there is no need to compare lawyers or the type of case before the Court to other lawyers or cases.  We are talking here about rates awarded to the same lawyers in the same district in the same type of case over a months-long span of time.  Indeed, while this motion was pending, Magistrate Judge Wilkinson ruled on a motion for attorneys' fees in a different ADA case brought by the Bizer and DeReus firm in which counsel requested the same rates they request here.  *See* Rec. doc. 34 in *Carrier v. Weber Property Group, L.L.C.*, No. 16-CV-6648 "N"(2)(June 14, 2017).  In that case, Judge Wilkinson correctly determined that Plaintiff's counsel had provided no "persuasive reason why their fee application filed less

8

than eight months after Judge Zainey's findings [in *Mark*] should be increased so dramatically." (*Id.* at p. 9).[5]

Plaintiff would have this Court ignore the months-old outcomes in *Mark* and *Carrier* and rely instead upon its two-year-old decision in *St. Joseph's Abbey v. Castille*, No. 10-CV-2717, 2015 WL 3444897 (E.D. La. May 27, 2015). The *St. Joseph's Abbey* case cannot be reasonably compared to this one in any meaningful way, which can be discerned on even a casual reading of the Court's opinion in that case. The *St. Joseph's Abbey* case was aggressively litigated for almost five years, tried, appealed to the Fifth Circuit and certified by that Court to the Louisiana Supreme Court. Moreover, as explained by the Court in *St. Joseph's Abbey*:

> The constitutional issues that were raised in this litigation were of first impression in the Fifth Circuit. Moreover, the two circuits that had addressed the matter had each reached different conclusions. Plaintiffs sought to have the court find a state statute unconstitutional using a rational basis test. This endeavor presented a very high burden for the plaintiff.
>
> 2015 WL 3444897 at *2.

By contrast and as stated above, the present case is one of almost 200 similar cases filed in this District alone by Plaintiff's counsel. It involved virtually no traditional litigation activity and almost every hour expended by counsel was done in connection with settling the case or litigating the issues of costs and fees. The only thing the *St. Joseph's Abbey* case has to offer anyone here is an opportunity for counsel to argue for higher rates. That argument is unconvincing.

---

[5] Although Magistrate Judge Wilkinson's Findings and Recommendations have not yet been acted upon by the presiding District Judge, the time for filing objections to the Findings and Recommendations has long expired.

There is another troubling anomaly with Plaintiff's requested hourly rates. As recently as November 3, 2016, Plaintiffs' counsel transmitted a half-page "invoice" to the City for settlement purposes. (Rec. doc. 30-4). While that "invoice" lacked any detail concerning the hours expended by counsel, it did set forth the rates they were ostensibly charging in this case: $300 per hour for Bizer, $175 per hour for DeReus, $150 per hour for Florman, and $75 per hour for the paralegal. (*Id.*).

Plaintiff's counsel argues in Herbert's reply brief that they should not be bound by these rates because they were transmitted for "settlement purposes only" and the law firm had reserved its right to adjust the rates upward in a formal request for attorneys' fees. (Rec. doc. 31-2 at pp. 5-6). Reserving one's right to act arbitrarily does not legitimize the subsequent arbitrary act. Far from demonstrating good *billing* judgment, counsel's conduct in this regard actually reveals a profound lack of understanding of the Court's function in determining what is reasonable in awarding attorneys' fees and costs. Fee litigation should not be an exercise in throwing everything against the wall to see what sticks. Indeed, this approach actually prolongs the process of determining a reasonable award, which is clearly contrary to the well-known admonition of the United States Supreme Court that "[a] request for attorney's fees should not result in a second major litigation." *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

It apparently bears repeating here that rates and hours that are not properly billed to one's client are likewise not properly billed to one's adversary. *See id.* at 434, 103 S.Ct. at 1940. This Court knows from long experience in private litigation that a manipulation of hourly rates such as the one executed here by Plaintiff's counsel would never be tolerated by

an actual client – why then should it be tolerated by the Defendant or embraced by the Court in this case?

In the final analysis, this Court agrees with Judges Zainey and Wilkinson and finds that the rates awarded by Judge Zainey in *Mark* on July 8, 2017 and by Judge Wilkinson in *Carrier* on June 14, 2017 are appropriate in this case.  (*See Mark,* No. 15-CV-5977, rec. doc. 30 at pp. 2-3; *see also Carrier*, No. 16-CV-6648, rec. doc. 34 at pp. 9-10 and cases cited therein).  Those rates are:

|  |  |
|---|---|
| Andrew Bizer | $275 per hour |
| Garret DeReus | $150 per hour |
| Marc Florman | $125 per hour |
| Paralegal | $75 per hour |

### C.  *Reasonable Hours Expended*

The next step in the calculation of the lodestar is the determination by the Court of the number of hours reasonably expended in the case.  As a threshold matter, the Court finds the time for all attorneys involved is well-documented.  The Court also notes that counsel exercised a level of billing judgment as to many entries by reducing or eliminating certain entries as unnecessary or duplicative.  However, for the reasons set forth below, the Court finds that counsel did not exercise the level of billing judgment required, particularly with regard to the motion for attorneys' fees and the reply brief filed in connection with that motion.

To analyze the reasonableness of Herbert's fee petition, it is necessary to divide the time expended by counsel into three categories:  time spent on the substantive part of the

case, time spent in drafting and filing the motion for attorney's fees (including the hearing), and time spent drafting and filing the reply brief.

1.   <u>The Time Expended on the Merits</u>

The Court's careful review of the evidence submitted in support of Plaintiff's motion establishes that the time billed up to and including January 26, 2017 can be attributed to the substantive part of the case.  In this particular case, that substantive work is almost entirely concerned with negotiating the terms of the consent judgment.  The overwhelming majority of entries on this part of the case concern "settlement," "consent judgment," "settlement conferences," or similar matters.  There was virtually no traditional litigation activity beyond this, *i.e.*, exchange of written discovery and responses thereto, exchange of expert reports, depositions, confection of pretrial order, etc.

The time requested by Plaintiff for this part of the case totals 58.87 hours, broken down as follows:

| | |
|---|---|
| Andrew Bizer | 21.85[6] |
| Garret DeReus | 9.93 |
| Marc Florman | 25.04 |
| Paralegal | 2.05 |

As noted, for the most part, the Court finds that counsel exercised reasonable billing judgment on this part of the case, with the following exception:  there is far too much time spent on interoffice conferences and emails between the three lawyers working on the case. While there is no rule that prohibits the use of multiple attorneys in a matter such as this one, the Court must nonetheless determine whether the time billed by each attorney was

---

[6]  This takes into account .10 hours Bizer later agreed should be stricken.

reasonably expended in this case.  And while a party is free to employ multiple attorneys, that party's opponent is not required to pay for duplicative work by those attorneys – it remains the burden of the party seeking fees to demonstrate the reasonableness of all the fees it seeks.  *Jolie Design & Décor, Inc. v. Gogh*, No. 15-CV-0740, 2016 WL 4708210 at *4 (E.D. La. Aug. 11, 2016), *adopted*, 2016 WL 4718186 (E.D. La. Sept. 7, 2016)(citing *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996)).

In analyzing the extent to which interoffice communication was reasonable and necessary in *this* case, a few observations are appropriate.  According to their affidavits attached to the motion for attorneys' fees, the three lawyers in this case have collectively been involved in over *500* ADA cases.  (Rec. docs. 27-3 through 27-5).  Lead counsel, Mr. Bizer, has himself filed 196 separate actions in this District in the last nine years, the overwhelming majority of which have been ADA cases.[7]  This was a straightforward, uncomplicated ADA case.  While the defendant is a public entity, which may have made resolution somewhat more time consuming, that fact did not unreasonably complicate the case.  As such, the Court finds that the level of interoffice communication reflected in counsel's submission was not commensurate with the needs of this case and that the hours awarded should be reduced somewhat for failing to exercise billing judgment.

"The remedy for failing to exercise billing judgment is to reduce the hours awarded as a percentage and exclude hours that were not reasonably expended.  Alternatively, th[e] Court can conduct a line-by-line analysis of the time report."  *Creecy v. Metropolitan Property*

---

[7]  In addition, the Court's own research reveals that in the past five years, Bizer has filed 47 ADA lawsuits in the Middle District of Louisiana and that he has filed 31 ADA lawsuits in the Western District of Louisiana in the past two years.

*and Casualty Insurance Company*, 548 F. Supp.2d 279, 285-86 (E.D. La. 2008)(citations omitted).  In this vein, however,

> trial courts need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.
>
> *Fox v. Vice*, 563 U.S. 826, 838, 131 S.Ct. 2205, 2216 (2011).[8]

So, rather than go through each and every entry in detail, the Court will apply a percentage reduction.  Because counsel has already reduced or eliminated certain entries as unnecessary or redundant, the Court finds the remaining time expended on the substantive portion of the case need only be reduced by 15%.  When this reduction is applied at the rates found above to be appropriate, the totals for this part of the case are as follows:

| | | | |
|---|---|---|---|
| Andrew Bizer | 21.85 @ | $275 per hour = | $6,008.75 |
| Garret DeReus | 9.93 @ | $150 per hour = | $1,489.50 |
| Marc Florman | 25.04 @ | $125 per hour = | $3,130.00 |
| Paralegal | 2.05 @ | $ 75 per hour = | $153.75 |
| | | Total | $10,782.00 |
| | | Reduced by 15% | **$9,164.70** |

This amount will be awarded for counsel's work on the substantive portion of the case.

---

[8] *See also Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, __, 137 S. Ct. 1178, 1187 (2017)(quoting *Fox*, 563 U.S. at 838, 131 S.Ct. at 2216)(Trial courts "'need not, and indeed should not, become green-eyeshade accountants' (or whatever the contemporary equivalent is).").

2.  <u>The Motion for Attorneys' Fees</u>

**"A request for attorney's fees should not result in a second major litigation."**[9]

While Plaintiff's counsel acknowledged this well-established rule in brief, they otherwise ignored it.  The Court's review of the materials submitted in support of Herbert's motion indicates that counsel devoted a total of 30.02 hours solely to the recovery of costs and fees in this case (as compared to the 58.87 hours devoted to the substantive portion).  In a case of this type, in which counsel has such extensive experience, the time expended on the recovery of fees and costs is wholly out of proportion to what was necessary and reasonable.

Plaintiff's bloated submission in support of her motion runs to 98 pages.  In her memorandum in support, Herbert's counsel used every line of the 25-page limit allowed under Local Rule 7.7, and then some.  That memorandum spends the better part of five pages arguing why this Court's decision in the *St. Joseph's Abbey* case is more persuasive in setting a reasonable hourly rate in this ADA case than myriad ADA cases from this District setting such rates, including Judge Zainey's decision in *Mark*.  That argument is supported by four separate affidavits, including one executed by a mystery lawyer unassociated with this case whose affidavit is apparently supposed to carry the imprimatur of an "expert," despite the fact that he has only practiced law for five years and, according to his affidavit, is not licensed in this District.  (Rec. doc. 27-14).[10]  This was all less than helpful to the Court.

---

[9] *Hensley*, 461 U.S. at 437, 103 S.Ct. at 1941.

[10]  It is worth noting that the affidavit of this lawyer, William Most, does contain one thing that is missing from the affidavits of the lawyers in this case – a statement that his "full hourly rate is $325.00" (Rec. doc. 27-14). Inexplicably, the Bizer, DeReus and Florman affidavits are completely silent on their customary rates.  The Court's review of the record also indicates that, while Mr. Most may charge others an hourly rate of $325, he apparently didn't do so here, as there is no indication anywhere that he was paid for executing the affidavit attached to the Plaintiff's motion.

Likewise, considering that this is one of hundreds of similar cases in which these attorneys have been involved, including at least four in which motions for attorneys' fees have been filed in the past year in this District alone, the Court finds that billing time for such tasks as "conduct[ing] simple lodestar analysis," discussing "strategy and content" and the "structure and tone" of Plaintiffs' memoranda, and researching "recent Judge North cases [with] lodestar analysis and fee awards" is simply unnecessary and that it unreasonably escalated the fee demand.

Considerable space and time has been devoted by Plaintiffs' counsel in the briefs and at the hearing to complaining that the City was uncooperative in trying to resolve the attorneys' fee claim and that it "never once made a good faith attempt to resolve Ms. Herbert's claims for attorneys' fees." (Rec. doc. 31-2 at p. 1). Counsel goes so far as to argue that as recently as seven months ago, Plaintiff offered to settle the fee claim for $4,374.41. (*Id.*). This statement troubles the Court for a number of reasons.

First, there is no evidence – only rhetoric – to support the argument that the City was intransigent in the litigation and settlement discussions and that its intransigence somehow is to blame for a *fivefold* increase in the amount of fees *reasonably* expended in a seven-month period. While the Court does note that the City advanced a specious argument concerning whether Plaintiff was a "prevailing party," the Court fully intends to allow for recovery of the time counsel devoted to responding to that argument. Beyond that, however, the Court, which was closely involved in assisting the parties in settling the matter, simply does not agree that any conduct on the part of the City could justify the accrual of $17,126 in fees in the last seven months of the case when only $4,374.41 accrued in the first six months and

16

the only real litigation that occurred in the latter period was the filing of the instant motion for attorneys' fees.

Second, the Court notes that the invoice submitted in support of Plaintiff's fee application bears an entry for February 6, 2017 for attorney, Marc Florman, that states "Begin Preparing Invoice for Fee Brief." (Rec. doc. 27-2 at p. 17). As there is only one "invoice" that the Court is aware of that contains an actual breakdown of hours expended by each attorney (for present purposes the invoice attached to the reply is not germane), one can only conclude that it was not until February 6, 2017 that it began to come into existence.[11] While Plaintiffs' counsel takes umbrage at the City's failure to negotiate their fee demand in "good faith," the Court can hardly fault the City for refusing to accede to Plaintiff's attorneys' fee demand when there was apparently no documentation to support that demand until February of this year.[12]

Finally, the Court notes five separate entries for various interactions with Plaintiff's expert, Gordon Sauer, related to an affidavit submitted in support of a claim for recoverable costs for his services in the amount of $2,650.59. The Court wishes that in one of those interactions, someone would have advised Mr. Sauer that something more than a statement that he was paid that amount would be required for the Court to assess the reasonableness of that claim. Lacking that information, the Sauer affidavit is of virtually no help to the Court.

As it did with the fee request for the substantive portion of the case, the Court declines to undertake a detailed adjustment of counsel's invoice, particularly considering the

---

[11] Indeed, the "invoice" transmitted to the City by Plaintiffs' counsel on November 3, 2016 (the one with lower hourly rates) is a half-page document with no detail concerning hours expended. (Rec. doc. 30-4).

[12] A "fee applicant has the burden to submit adequate documentation of the hours reasonably expended" in order to recover attorneys' fees. *Louisiana Power & Light Co.*, 50 F.3d at 324.

numerous deficiencies it has identified.  Rather, it will allow recovery of the following amounts:  one (1) hour of paralegal time to assemble and organize the records necessary to support the attorneys' fee claim; six (6) hours of time by Florman to draft the motion; one (1) hour by Bizer to review and edit the motion and exhibits; and .75 hours each for Bizer and Florman to prepare for and attend the hearing.[13]  The totals for this part of the case are as follows:

| | | | |
|---|---|---|---|
| Andrew Bizer | 1.75 @ | $275 per hour = | $481.25 |
| Marc Florman | 6.75 @ | $125 per hour = | $843.75 |
| Paralegal | 1 @ | $ 75 per hour = | $75.00 |
| | | **Total** | **$1,400.00** |

### 3.  The Reply Brief

As noted above, Plaintiff filed a 10-page reply brief that largely re-hashed the earlier arguments made in the motion.  That brief was accompanied by a request (and four new exhibits, including another invoice) seeking an additional $3,017.25, all but $135.00 of which is associated with the filing of said reply.  (Rec. doc. 35).[14]  This amount is said to have been accrued in a *six-day* period, from February 28 to March 6, 2017.  (*Id.*).  This amount of time, expended in six *days*, can be compared (quite unfavorably in the Court's view) to the $4,374.41 Plaintiff's counsel claimed to have expended in the first six *months* of the case, as stated on the first page of the reply brief.  (*Id.*).  This comparison alone would lead one to

---

[13]  The Court will allow recovery of this time because it understands that Florman was prepared to handle the oral argument but the Court questioned both Florman and Bizer about numerous issues at the hearing.

[14]  This amount was billed for clerical tasks that are not recoverable, such as preparing a binder for the Court and delivering it to chambers.  *See Vela v. City of Houston*, 276 F.3d 659, 681 (5th Cir. 2001)("[p]aralegal work can only be recovered as attorney's fees if the work is legal rather than clerical"); *see also Prime Ins. Syndicate, Inc. v. Jefferson*, 547 F.Supp.2d 568, 575 (E.D. La. 2008).

conclude that the amount claimed in connection with the reply brief is inflated.  The Court's review of the invoice and the reply brief itself confirms this view.

Most of the reply brief was a re-hashing of arguments already advanced in Plaintiff's original motion.  This was wasteful of both counsel's and this Court's time, *especially* when Plaintiff's counsel knew the matter was set for oral argument.   The one area in which the Court finds counsel's time was not wasted was in answering the City's unfounded "prevailing party" argument, which was lacking enough in merit that counsel for the City abandoned it at the hearing.  (Rec. doc. 37 at pp. 2-3).  Accordingly, the Court finds that all time allotted to the filing of the reply brief should be disallowed, save the following, which will be awarded:

> March 1, 2017 entry of Florman for meeting with DeReus to discuss the City's opposition memorandum **(.15 hours)**;
>
> March 3, 2017 entries of Florman for discussing the opposition memorandum with Bizer, reviewing the City's opposition memorandum, and researching new case law cited in the City's brief **(2.90 hours)**;
>
> March 4, 2017 entry of Florman for reviewing the City's exhibits and detailed comments on Plaintiff's counsel's entries **(.50 hours)**;
>
> March 6, 2017 entries of Florman for drafting the introduction and argument concerning prevailing party status; incorporating co-counsel's edits into the reply brief; and preparing the motion and order for leave **(3.13 hours)**.

Florman's allowable hours of 6.68 at his hourly rate of $125 per hour totals **$835.00.**

### D.   *Recoverable Costs*

Herbert seeks a total of $3,125.59 in recoverable costs.  (Rec. doc. 27-2 at p. 20).  The Court finds that the filing fee ($400) and service costs ($75) are reasonable and appropriate and will award those amounts.

The remainder of the claim consists of $2,650.59 in "expert fees" paid to Gordon Sauer ("Sauer"), Herbert's expert.  Plaintiff's motion is accompanied by an affidavit executed by Sauer, (rec. doc. 27-9); an agreement between Sauer and Plaintiff's counsel executed in June 2016 (rec. doc. 27-10); and copies of invoices and checks written from the "Bizer Law Firm" to Sauer.  (Rec. doc. 27-11 through 27-13).  These documents together establish that Sauer completed a Rule 34 inspection of Kenilworth Playground and drafted a lengthy expert report and violations table, which was used in settlement negotiations.  (Rec. doc. 27-9).  For these services, Sauer billed and was paid for 29.50 hours at $75 per hour and 11.75 hours at $30 per hour (for clerical work).  (Rec. docs. 27-9, 27-12, 27-13).  He also charged back $70.59 in reimbursable costs.  (Rec. doc. 27-12).  Bizer attested under oath that all of the fees expended, including the amounts paid to Sauer, were necessary for the prosecution of the case.  (Rec. doc. 27-3).

In its opposition memorandum, the City points out that Sauer's invoices are "vague and ambiguous" and that he should have been required to appear at the hearing and testify to the reasonableness of his charges.  (Rec. doc. 30 at p. 21).  While the Court agrees that Sauer's documentation is lacking in terms of the level of specificity that the Court would like to see, *i.e.*, time sheets or another type of breakdown demonstrating exactly how he spent the time he billed for, the amount claimed for his work will not be reduced.

The Court is familiar with Sauer's work product in this case, having spent considerable time with the parties attempting to resolve the substantive issues.  Indeed, Sauer's violations table was incorporated into the consent judgment and is in the record of the case as such.  (Rec. doc. 20-2).  Because the Court can easily correlate the time charged to counsel by Sauer with his work product, it sees no need to reduce that amount.  In the

future, however, the Court strongly recommends that counsel ensure that their experts better document their time, lest the recovery for costs paid to those experts be reduced for inadequately proving up the reasonableness of those costs.

E.  *Adjustment Pursuant to* Johnson

While the Court may make upward or downward adjustments to the lodestar figure if the *Johnson* factors so warrant, the lodestar is presumptively correct and should be modified only in exceptional cases.  *See Watkins*, 7 F.3d at 459.  This is not such a case.  Having reviewed the lodestar against the various *Johnson* factors that could arguably apply in this case, the Court determines that no adjustments are warranted.

IV.     **CONCLUSION**

There has been much debate and discussion nationwide about the proliferation of ADA enforcement actions like this one and the "problem" of disproportionate fee demands associated with many of those cases.  A quotation often repeated by courts in these cases is that the ADA "... was never intended to turn a lofty and salutary mission into a fee generating mill for some lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case." *Brother*, 341 F. Supp. 2d at 1233.  In this case, it is hard to avoid the conclusion that some of that warned-against exploitation is taking place, despite counsel's protestations that their cause is noble.  Of course the cause is noble.  But that doesn't give counsel free rein to weaponize the attorneys' fees provision of the Act in the hope of scoring an outsized fee award.  This case bears many earmarks of that kind of opportunism.

If, in the scores of ADA cases they will inevitably file in the future, counsel in this case wish to disabuse the Court of any notions that they are engaging in such opportunism, they would be well-advised to heed the admonitions of the various judges in this District who

have criticized their submissions for reasons similar or identical to those set forth above. They would think twice about putting multiple lawyers on every case and then conversing with and emailing each other about mundane issues, expecting their opponents to pay for that inefficient use of time.   They would reconsider filing briefs that exceed the page limitations of this Court when half as many would easily suffice.  They would honestly weigh the necessity of submitting full-page-limit reply memoranda to every motion for attorneys' fees they file – even when oral argument has been scheduled.  They would abandon the strategy of asking for the moon and settling for a slice.  And they would refrain from conduct that results in a 500% increase in their fee demand over a seven-month period.

As the Court noted earlier, fee litigation should not be an exercise in throwing everything against the wall to see what sticks, yet that is clearly the strategy being employed by counsel in this case.

All three attorneys on this case are able, professional advocates for their clients.  They routinely obtain excellent results for those clients and this Court regularly welcomes them to settlement conferences to resolve the cases they bring here.  They also often settle the attorneys'-fee claims in these cases on what the Court assumes are terms acceptable to their clients' opponents.  However, in this case at least, when they were required to move to recover fees and costs, their request was entirely out of proportion to what was reasonable or necessary in the case (the accrual of $17,126 in time in the seven months following their $4,374 demand for six months of work is indefensible).  The Court sincerely hopes that counsel stop swinging for the fences every time they move to recover fees and costs – simply because they can – and instead submit *reasonable* requests that are supported by the law and the facts.  Their current approach requires the Court (whose time is also valuable, by the

22

way) to devote a disproportionate amount of its time and effort to wading through unnecessarily bloated submissions.  A new approach is warranted.

Based upon the foregoing, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Attorneys' Fees and Costs.  The City of New Orleans is hereby ordered to pay to Plaintiff, Tasha Herbert, **$11,399.70** in reasonable attorneys' fees and **$3,125.59** in recoverable costs, for a total of **$14,525.29**.

New Orleans, Louisiana, this  28th  day of _____ July _____ 2017.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE